Milton **RICHARDSON**, Jr., Plaintiff,

v.

**TEX–TUBE COMPANY**, Defendant.

**Civil Action No. H–09–2245.**

United States District Court,
S.D. Texas,
Houston Division.

Feb. 10, 2012.

Woodrow Epperson, Attorney at Law, Houston, TX, for Plaintiff Milton Richardson, Jr.

Jay R. Aldis, Bracewell & Giuliani, LLP, Houston, TX, for Defendant Tex–Tube Company.

## ORDER AND FINAL JUDGMENT

DAVID HITTNER, District Judge.

Pending before the Court is Defendant's Motion for Attorney's Fees and Costs (Document No. 32). Having considered the motion, submissions, and applicable law, the Court determines that Defendant's motion should be granted in part and denied in part.

## I. BACKGROUND

This is a case arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff Milton Richardson, Jr. ("Richardson") is an employee of Defendant Tex–Tube Company ("Tex–Tube"). On February 8, 2008, Richardson was terminated by Tex–Tube. This termination led to two actions by Richardson: (1) a formal grievance filed pursuant to a collective bargaining agreement; and (2) a claim filed by Richardson with the Equal Employment Opportunity Commission (the "EEOC") and subsequent filing of the lawsuit at issue.

At the time of his termination, Richardson had been working at Tex–Tube as a machine operator. Tex–Tube claimed that termination was based on attendance and tardiness issues. Richardson filed a grievance seeking reinstatement under the applicable collective bargaining agreement, and the claim was scheduled for arbitration. On February 11, 2009, while the parties awaited arbitration, Richardson filed a Charge of Discrimination with the EEOC, alleging gender discrimination and retaliation, both related to his termination. The EEOC issued a Dismissal and Notice of Rights Letter to Mr. Richardson. On July 15, 2009, Richardson, proceeding pro se at the time, sued Tex–Tube for gender discrimination and retaliation—the lawsuit at issue.

On December 9, 2009, Richardson's original grievance was submitted to arbitration. At issue in the arbitration was whether the number of tardies accumulated by Richardson were sufficient to justify termination. Richardson did not assert discrimination or retaliation claims in the arbitration. The arbitrator ruled in favor of Richardson and ordered his reinstatement at Tex–Tube, where he is still employed. Meanwhile, Richardson's lawsuit remained active. Then, almost two years after the filing of the lawsuit, Richardson voluntarily dismissed the case with prejudice. Throughout the pendency of the case, Tex–Tube maintained that "Plaintiff's claims [were] unreasonable, frivolous, vexatious and brought for the purposes of harassment." [1] Based on those allegations, Tex–Tube now seeks attorney's fees related to the litigation. Specifically, Tex–Tube seeks to recover $13,073.75 in attorney's fees and $1,330.11 in costs. Richardson opposes Tex–Tube's motion and argues that the request for attorney's fees is, in effect, a collateral attack on the earlier arbitration award, which reinstated his employment. Richardson also contends that attorney's fees should not be awarded because the "[C]omplaint sets forth colorable federal antidiscrimination claims, unrelated to the attendance and tardiness matters[,] which were the subject of the

1. *Advisory Letter from Jay Aldis, Tex–Tube's Counsel, to the Court,* July 18, 2011.

arbitration."[2] Moreover, Richardson argues that attorney's fees are unnecessary because, although litigation was pending for two years, during that time he did not make any requests for discovery or file any motions necessitating a response by Tex–Tube. The Court will analyze Tex–Tube's and Richardson's arguments in turn.

## II. LAW & ANALYSIS

### A. Awarding Attorney's Fees in Civil Rights Cases

■ Congress has authorized the award of reasonable attorney's fees to the prevailing party in Title VII disputes. 42 U.S.C. § 2000e–5(k). While prevailing plaintiffs are almost always entitled to attorney's fees, the Supreme Court of the United States has held that to recover attorney's fees, prevailing defendants must show that "the plaintiff's action was frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). Therefore, when determining whether a movant is entitled to attorney's fees, a court must (1) note whether the movant is the plaintiff or the defendant; (2) determine whether the movant is the prevailing party; and, if the defendant is the moving party, (3) determine whether the lawsuit was frivolous, unreasonable, or without foundation. *Dean v. Riser*, 240 F.3d 505, 508 (5th Cir.2001); *Univ. of Kan. v. Sinks*, No. 06–2341–JAR, 2008 WL 750350, at *1

(D.Kan. Mar. 19, 2008). Here, the defendant, Tex–Tube, is moving for attorney's fees, therefore the Court must determine whether Tex–Tube was the prevailing party and whether the lawsuit was frivolous, unreasonable, or without foundation. *Hilborn v. Klein Indep. Sch. Dist.*, No. H–09–840, 2010 WL 1463472, at *24 (S.D.Tex. Apr. 12, 2010) (Johnson, Mag. J.).

### 1. Whether Tex–Tube Is the Prevailing Party

■ Only a "prevailing party" is entitled to attorney's fees in Title VII actions; this requirement is applicable whether the movant is a plaintiff or a defendant. 42 U.S.C. § 2000e–5(k). The United States Court of Appeals for the Fifth Circuit has held that "a defendant is not a prevailing party [for purposes of awarding attorney's fees] when a civil rights plaintiff voluntarily dismisses his claim, unless the defendant can demonstrate that the plaintiff withdrew to avoid a disfavorable judgment on the merits." *Dean*, 240 F.3d at 511.[3] The Fifth Circuit explained that this approach sought to encourage "civil rights plaintiffs to dismiss voluntarily nonviable claims while [also] protecting civil rights defendants from the burdens of frivolous litigation." *Id.* Merely months after the Fifth Circuit issued its opinion in *Dean*, the Supreme Court of the United States, in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, held that to qualify as a "prevailing party," fee-shifting statutes require "judicial imprimatur" that materi-

---

**2.** *Richardson's Response to Motion for Attorney's Fees and Costs* at 3, ¶ 8.

**3.** *Dean* was a case discussing attorney's fees under 42 U.S.C. § 1988, the Civil Rights Attorney's Fees Award Act of 1976. Tex–Tube seeks an award of attorney's fees under 42 U.S.C. § 2000e–5(k), the provision that grants attorney's fees to the prevailing party in Title VII disputes. This difference is of no conse-

quence because the provisions are almost identical. In fact, Congress modeled § 1988 after the Title VII fee provision, and therefore, courts have applied the same analysis for both, making case law discussing either provision applicable. *N.C. Dep't of Transp. v. Crest St. Cmty. Council*, 479 U.S. 6, 20–21, 107 S.Ct. 336, 93 L.Ed.2d 188 (1986).

ally alters the legal relationship of the parties in favor of the movant. 532 U.S. 598, 605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). *Buckhannon* dealt with a plaintiff who was seeking attorney's fees as the prevailing party after a defendant voluntarily altered their behavior in response to the lawsuit, thereby mooting the litigation. Known as the catalyst theory of "prevailing party," some circuits had previously upheld attorney's fees awards to plaintiffs under similar circumstances. In *Buckhannon*, however, the Supreme Court rejected the catalyst theory and held that a plaintiff is not a prevailing party unless there is some sort of judicial action or court-issued order. *Id.*

■ Since *Buckhannon*, several circuits have held that a judicial order granting a plaintiff's request for voluntary dismissal with prejudice is sufficient judicial imprimatur to satisfy the requirement set out by the Supreme Court in *Buckhannon*. *See Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1035–36 (Fed.Cir.2006) (analyzing "judicial imprimatur" as discussed in *Buckhannon* and precedent regarding voluntary dismissals); *Claiborne v. Wisdom*, 414 F.3d 715, 719 (7th Cir.2005) (doing the same). Moreover, since *Buckhannon*, the Fifth Circuit has reaffirmed that a defendant may be considered a prevailing party when a plaintiff voluntarily dismisses a case, but only if they can show that the case was dismissed to avoid an unfavorable determination on the merits.[4] *See Fox v. Vice*, 594 F.3d 423, 426–27 (5th Cir.2010) (applying the *Dean v. Riser* test), *overruled on other grounds*, —— U.S. ——,

131 S.Ct. 2205, 180 L.Ed.2d 45 (2011). Therefore, this Court must determine that the requirements of *Buckhannon* and the *Dean* test are both satisfied before Tex–Tube can be deemed a "prevailing party."

### a. Buckhannon's *Requirement of Judicial Imprimatur*

■ In the case at bar, Richardson moved to voluntarily dismiss the lawsuit with prejudice before trial began, and the Court issued an order granting a dismissal with prejudice.[5] The Court's order equates to judicial imprimatur. *Highway Equip. Co.*, 469 F.3d at 1035–36; *Claiborne*, 414 F.3d at 719. Thus, the Supreme Court's *Buckhannon* requirement is satisfied, and the only inquiry remaining is whether Tex–Tube has met its burden of showing that Richardson voluntarily dismissed this suit to avoid an unfavorable judgment on the merits as required by Fifth Circuit law.

### b. The Dean *Test: Reason for Dismissal*

Richardson did not identify his reason for dismissing the suit. Tex–Tube, however, submitted Richardson's deposition, taken just two days before Richardson moved to voluntarily dismiss the case, which Tex–Tube argues tends to show that Richardson dismissed the case to avoid an unfavorable judgment and the further accrual of Tex–Tube's attorney's fees. In the deposition, Richardson admitted numerous times that he did not have any facts to support his claims.[6] In addition, during the deposition, Tex–Tube's counsel informed Rich-

---

**4.** Although it was cited, the Fifth Circuit did not discuss *Buckhannon* at any length in its *Fox* opinion. However, in applying the *Dean* test, the Fifth Circuit implied that, at least in some circumstances, the *Dean* test satisfies the requirements of *Buckhannon*. *Fox*, 594 F.3d at 426.

**5.** *Motion to Dismiss; Order of Dismissal*, July 18, 2011.

**6.** *Defendant's Motion for Attorney's Fees and Costs*, Exhibit B at 5253, 8990 (Oral Deposition of Milton Richardson, dated July 13, 2011).

ardson that he had failed to timely file his discrimination complaint with the EEOC and that timely filing a complaint was a prerequisite for filing a civil lawsuit.[7] Finally, Tex–Tube's counsel also notified Richardson during his deposition that Tex–Tube considered the lawsuit frivolous and would be seeking attorney's fees, which would include all fees incurred up to the date of the deposition and, if the suit persisted, fees incurred in preparing a motion for summary judgment.[8] Merely two days after this deposition, Richardson moved to dismiss the lawsuit. Therefore, based on Richardson's inability to articulate any factual basis for his claims during his deposition and the timing of his dismissal, the Court determines that Richardson dismissed the case upon belief that proceeding with the case would lead to an unfavorable judgment on the merits of his claims. Accordingly, the *Dean* test is satisfied, and Tex–Tube is the prevailing party for purposes of awarding attorney's fees.

### 2. Whether Richardson's Lawsuit Was Frivolous, Unreasonable, or Without Foundation

■ Having established that it is the prevailing party, Tex–Tube must also show that Richardson's lawsuit was frivolous, unreasonable, or without foundation. *Dean*, 240 F.3d at 512. The dismissal of a claim does not, itself, show that a suit was frivolous, unreasonable, or without foundation; instead, the defendant bears the burden of proving that the claim was meritless—an analysis independent of the dismissal. *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1053 (5th Cir.1998) (citing *Hughes v. Rowe*, 449 U.S. 5, 15–16,

101 S.Ct. 173, 66 L.Ed.2d 163 (1980)). Subjective bad faith, however, is not a prerequisite for the award of attorney's fees, and therefore, Tex–Tube must only show that the lawsuit was objectively meritless, not that Richardson brought the claim maliciously or in bad faith. *Christiansburg Garment Co.*, 434 U.S. at 421, 98 S.Ct. 694. Moreover, the Fifth Circuit has upheld an award of attorney's fees to a defendant in a Title VII case when a plaintiff failed to show any evidence to support his claim. *Harris v. Plastics Mfg. Co.*, 617 F.2d 438, 440 (5th Cir.1980).

■ Tex–Tube filed Richardson's deposition, contending that the testimony contained therein is evidence of the frivolity and baselessness of the lawsuit. When deposed, Richardson failed to state any facts to support his discrimination or retaliation claims.[9] In fact, Richardson admitted that he had no facts, "at the moment," that specifically supported his claims.[10] The deposition illustrates that Richardson could not establish a prima facie discrimination or retaliation claim, nor could he show that he had properly exhausted his administrative remedies, a prerequisite for filing this lawsuit.[11] Further, Richardson admits that he never complained of discrimination to anyone at Tex–Tube, nor does he know of anyone that supports his belief that he was discriminated and retaliated against.[12] Nonetheless, Richardson pursued this claim for over two years. Based on the deposition testimony of Richardson, taken under oath on July 13, 2011, as well as the underlying factual contentions set forth in the record, the Court finds that the claims Richardson asserted

7. *Id.* at 54–58.

8. *Id.* at 156.

9. *Id.* at 52–53, 89–90.

10. *Id.* at 89.

11. *Id.* at 54–58.

12. *Id.* at 96–97.

against Tex–Tube were meritless and without foundation.

### 3. Richardson's Objections to the Award of Attorney's Fees

Richardson argues that, notwithstanding any determination of this Court on the case's merit, attorney's fees should not be awarded because doing so would circumvent the arbitrator's award in favor of Richardson against Tex–Tube in the nonrelated arbitration. The Court fails to see how the arbitration is relevant to the pending case. Richardson, himself, admits that the discrimination and retaliation claims filed in this lawsuit are "unrelated to the attendance and tardiness matters which were the subject of the arbitration" and that "[t]he record is silent on whether the arbitration award addressed the discrimination claims asserted by Richardson in this action." [13] The record does show, however, that despite the arbitration of his tardiness claims, Richardson deliberately chose to file this lawsuit in federal court and has allowed it to continue for over two years, despite a favorable outcome in the unrelated arbitration. Therefore, the Court determines that, based on the record, this litigation is entirely separate from any arbitration that may have occurred and that an award of attorney's fees would not circumvent the unrelated arbitration. Accordingly, the objection is overruled, and an award of attorney's fees is proper. The Court must now determine the reasonable amount of attorney's fees to be awarded to Tex–Tube.

### B. Calculating Attorney's Fees

#### 1. The Standard

Attorney's fees requests in the Fifth Circuit are governed by the "lodestar" analysis. *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir.1996); *Turner v. Oxford Mgmt. Serv., Inc.*, 552 F.Supp.2d 648, 650 (S.D.Tex.2008) (Atlas, J.). The lodestar is the product of the number of hours reasonably expended on the litigation multiplied by the movant's attorney's reasonable hourly billable rate. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir.1996); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 331 (5th Cir.1995). The movant bears the burden of demonstrating that both the hours expended and rates charged by counsel are reasonable. *See Hensley*, 461 U.S. at 427, 103 S.Ct. 1933.

In setting a reasonable billing rate, courts are directed to consider the attorney's regular rates as well as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Evidence of reasonableness of a proposed hourly rate must include an affidavit or declaration of the attorney performing the work and information about rates actually billed and paid in similar lawsuits. *Id.* at 896, 104 S.Ct. 1541. Appropriate rates can be determined through direct or opinion evidence about what local attorneys charge under similar circumstances. *Id.* at 896 n. 11, 104 S.Ct. 1541; *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir.1988).

Similarly, to establish that the amount of time expended on a matter is reasonable, the movant can only meet his burden by presenting evidence that is adequate for a court to determine what hours should be included in the award. *Bode v. United States*, 919 F.2d 1044, 1047 (5th

13. *Richardson's Response to Motion for Attorney's Fees and Costs* at 3, ¶¶ 6, 8.

Cir.1990). Thus, courts generally require the movant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application to determine the amount of compensable hours. *Id.* If the documentation is vague or incomplete, a court may reduce the hours. *La. Power & Light Co.,* 50 F.3d at 324. Finally, courts are to review time records supplied by the movant and exclude from the lodestar calculation all time that is "excessive, duplicative, or inadequately documented." *Watkins v. Fordice,* 7 F.3d 453, 457 (5th Cir.1993) (citing *Hensley,* 461 U.S. at 432, 103 S.Ct. 1933).

Once the lodestar figure is determined, the court may adjust the figure upward or downward as necessary to make the award of attorney's fees reasonable, while ensuring the fee award does not provide a windfall to the movant. *See Hensley,* 461 U.S. at 429, 103 S.Ct. 1933. Although courts have "broad discretion in setting the appropriate award of attorney's fees," there is a strong presumption that the lodestar amount is reasonable and should be modified only in exceptional cases. *City of Burlington v. Dague,* 505 U.S. 557, 562, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992); *Saizan v. Delta Concrete Prods. Co., Inc.,* 448 F.3d 795, 800 (5th Cir.2006). In deciding whether to make an adjustment to the lodestar figure, courts are instructed to consider the factors articulated in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717–19

(5th Cir.1974).[14] Courts are to give "special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation, and ability of counsel." *Migis v. Pearle Vision, Inc.,* 135 F.3d 1041, 1047 (5th Cir.1998).

### 2. Application

Here, Tex–Tube requests $13,073.75 in attorney's fees for payment of its counsel, Jay Aldis, a partner at Bracewell & Giuliani, LLP. As the movant, Tex–Tube bears the burden of demonstrating that this amount is based upon reasonable hourly rates and a reasonable amount of time expended on the litigation. *Hensley,* 461 U.S. at 427, 103 S.Ct. 1933.

#### a. Reasonable Hourly Rate

As evidence of the qualifications of its counsel and the reasonableness of the rates charged, Tex–Tube has submitted an affidavit of its attorney, Mr. Aldis.[15] In his affidavit, Mr. Aldis states that he has been licensed in Texas for more than eighteen years and has been Board Certified in labor and employment law since 1998, having handled hundreds of employment law cases. Mr. Aldis is a partner at Bracewell & Giuliani, LLP and has an extensive list of publications and speeches. Despite Mr. Aldis's actual billing rate of $480 per hour for work done on this case, Tex–Tube has exercised billing judgment and is requesting attorney's fees at an hourly rate of $350 per hour. Mr. Aldis attests that the

**14.** These factors include: (1) The time and labor required to represent the clients; (2) The novelty and difficulty of the issues in the case; (3) The skill required to properly perform the legal services; (4) Preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee charged for those services in the relevant community; (6) Whether the fee is fixed or contingent; (7) The time limitations imposed by the client or circumstances; (8) The

amount involved and the results obtained; (9) The experience, reputation, and ability of attorneys; (10) The undesirability of the case; (11) The nature and length of the professional relationship with the client; and (12) Awards in similar cases.

**15.** *Defendant's Motion for Attorney's Fees and Costs,* Exhibit A.

requested rate of $350 per hour is consistent with the prevailing market rate in this community. Richardson has not objected to the hourly rate. Moreover, another federal district court case in Houston has recently approved attorney billing rates in the labor and employment context that were even higher than the rate requested by Tex–Tube. *See Humphrey v. United Way of Tex. Gulf Coast*, 802 F.Supp.2d 847, 862–65 (S.D.Tex.2011) (Harmon, J.) (awarding $425 per hour). Based on the qualifications of Mr. Aldis, the rates charged in the local community, and the Court's experience in considering attorney's fees in similar cases, this Court finds Tex–Tube has submitted sufficient evidence to show that the rate of $350 an hour is reasonable.

■■■■ In addition, Tex–Tube has requested paralegal's fees for work done by Gayle McKay, a paralegal at Bracewell & Giuliani, LLP, at a billing rate of $190 per hour during the first year of litigation and $210 per hour in subsequent years. Tex–Tube, however, fails to provide any evidence to show that these rates are aligned with the prevailing market rates of paralegals in this community or practice area. Further, the time records submitted by Tex–Tube show that the majority of time billed by Ms. McKay was attributable to administrative scheduling work on the case, not work requiring the use of Ms. McKay's highest skill level, which might justify a more substantial billing rate.[16] Having failed to meet their burden of showing Ms. McKay's rate is reasonable, the Court finds that a reduction of Ms. McKay's hourly fee is appropriate and will adjust her hourly rate to $125 an hour. *See Humphrey*, 802 F.Supp.2d at 862–65

(applying an hourly rate of $125 per hour for a paralegal's time). Accordingly, this Court adopts the following hourly rates: $350 per hour for Mr. Aldis and $125 per hour for Ms. McKay.

### b. *Hours Reasonably Expended on the Litigation*

■■■ In his affidavit, Mr. Aldis attests that he spent 36.25 hours working on the case and that Ms. McKay spent 2 hours working on the case. However, Tex–Tube has not submitted detailed time records to support those hourly calculations. Instead, the records submitted to the Court show 22.5 billable hours on behalf of Mr. Aldis and 2.2 billable hours on behalf of Ms. McKay—a difference of 13.55 hours. Tex–Tube did not supply billing records to support the additional 13.55 billable hours, thereby failing to meet its burden of providing sufficient evidence to support an award for those hours. *See La. Power & Light Co.*, 50 F.3d at 324 (explaining that a movant bears the burden of providing sufficient documentation to justify the requested quantity of billable hours). Accordingly, the base number of hours used to calculate the lodestar method will be those reflected in the billing records submitted to the Court.

Richardson objects to the time spent on litigation for two reasons. First he argues that while the case has been pending for quite some time, Richardson never requested discovery nor did he file any motions requiring a response. Richardson, contends that because he did not conduct any discovery, "the expenditure of attorney fees in discovery by Tex–Tube is a matter of Tex–Tube's creation" and there-

---

**16.** The billed entries for Ms. McKay were administrative in nature. *See Defendant's Motion for Attorney's Fees and Costs*, Exhibit A at 15 (calendaring new trial deadlines); *id.* at 18 (reviewing court docket for scheduling information); *id.* at 43 (filing documents, reviewing court deadlines, and drafting documents).

fore should not be awarded.[17] Second, Richardson argues that if Tex–Tube deemed the lawsuit meritless, then it should have filed a motion to dismiss or a motion for summary judgment, thereby limiting the attorney's fees incurred. Tex–Tube, on the other hand, contends that the time expended on litigation was reasonable, as it reflects the necessary work done to defend this case. Moreover, Tex–Tube argues the claims asserted were frivolous from inception and were without foundation. Tex–Tube also states that they "informed Richardson and his counsel numerous times that the case should be dismissed."[18] Tex–Tube argues that Richardson's objections are irrelevant.

The Court agrees with Tex–Tube. First, discovery is an inherent part of any civil lawsuit—the discovery process is triggered by the filing of a lawsuit. It does not matter whether Richardson himself sought discovery; a defendant is entitled to discovery as well. Second, Richardson's contention that Tex–Tube should have filed a dispositive motion seeking dismissal attempts to shift the onus of the lawsuit's existence. Richardson filed suit in this case, not Tex–Tube. By filing a lawsuit, a plaintiff compels the defendant to acquire counsel and to begin establishing a defense. Richardson then made the decision to allow this lawsuit to perpetuate for over two years before dismissing the case with prejudice. Moreover, had Tex–Tube researched, prepared, and filed additional motions in this case, additional attorney's fees might have been accrued.

As a result of the Court's above analysis, Richardson's objections are overruled and no further deductions are warranted. Accordingly, the Court adopts the hours submitted by Tex–Tube and evidenced by billing records—22.5 billable hours on behalf of Mr. Aldis and 2.2 billable hours on behalf of Ms. McKay.

### c. The Lodestar Amount

Having determined the reasonable hourly rates and the reasonable amount of hours spent on litigation, the Court determines the lodestar amount as follow:

| Billing Individual | Rate | Hours | Lodestar Total |
|---|---|---|---|
| Aldis | $350 | 22.5 | $7,875.00 |
| McKay | $125 | 2.2 | $275.00 |
| | | Total: | $8,150.00 |

### d. Adjustments to the Lodestar Amount

The Supreme Court of the United States has recently affirmed the lodestar calculation. *Perdue v. Kenny A. ex rel. Winn*, — U.S. —, 130 S.Ct. 1662, 1671–73, 176 L.Ed.2d 494 (2010). The Court explained, "there is a 'strong presumption' that the lodestar figure is reasonable," and the presumption may only "be overcome in ... rare circumstances." *Id.* at 1673. Other than the general objections to an award of attorney's fees, which have already been addressed, neither party contends that any rare circumstances exist which would act to alter the lodestar calculation, nor does the Court know of any. Accordingly, Tex–Tube is entitled to attorney's fees equal to the lodestar amount—$8,150.00.

### C. Costs

Rule 54(d) of the Federal Rules of Civil Procedure provides that costs should

---

17. *Richardson's Response to Motion for Attorney's Fees and Costs* at 3, ¶ 7.

18. *Defendant's Motion for Attorney's Fees and Costs* at 2.

be awarded to the prevailing party. FED. R. CIV. PRO. 54(d). Federal Courts have explained that Rule 54(d) allows for costs to be awarded in two ways. Taxable costs, those set out in 28 U.S.C. § 1920, and nontaxable expenses.[19] *Vanderbilt Mortg. & Fin., Inc. v. Flores,* Civil Action No. C–09–312, 2011 WL 2160928, at *7 (S.D.Tex. May 27, 2011) (Jack, J.). Tex–Tube requests costs in the amount of $1,330.11 but does not specify the type of costs that it seeks to recover—taxable or nontaxable. Moreover, the amount requested does not match the sum of expenses submitted as part of Tex–Tube's billing records, nor was an itemized list of expenses filed with the Court. Nonetheless, the Court has categorized the expenses set forth in Tex–Tube's billing records as follows:

| Cost Category | Amount Billed |
| --- | --- |
| Copies/Reproductions/Printing Costs | $90.95 [20] |
| Online Document Retrieval Costs | $0.16 [21] |
| Courier/Delivery Costs | $84.00 [22] |
| Document Production Costs | $274.60 [23] |
| Deposition Costs | $964.40 [24] |

*Total:* $1,414.11

Taxable costs are specifically identified in 28 U.S.C. § 1920, and the Supreme Court has limited the district court's discretion in taxing costs in addition to those enumerated in § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441–42, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987).[25] Section 1920 allows for the taxation of six classifications of costs.[26] Of the costs Tex–Tube submitted, only two of the categories identified by the Court and listed above fall within the purview of § 1920's classifications as taxable costs: (1) copies/repro-

**19.** In 1993, Rule 54 was amended to distinguish between taxable costs and nontaxable expenses. FED.R.CIV.P. 54 (1993 Amendment Note).

**20.** *Defendant's Motion for Attorney's Fees and Costs,* Exhibit A at 10 ($84.60 for reproductions); *id.* at 13 ($4.65 for reproductions); *id.* at 16 ($0.30 for reproductions); *id.* at 43 ($1.40 for photocopies).

**21.** *Id.* at 16.

**22.** *Id.* at 10 ($47.00 for a 3rd party courier); *id.* at 40 ($37.00 for outside delivery).

**23.** *Id.* at 34.

**24.** *Id.*

**25.** The Supreme Court issued this opinion before the 1993 amendment to Rule 54(d). Therefore, *Crawford Fitting Co.* discussed a district court's discretion in awarding *taxable costs.* As discussed above, now Rule 54(d)(2) provides a mechanism for a district court to exercise discretion in awarding nontaxable expenses.

**26.** Specifically, § 1920 states:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk or marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, salaries, fees, expenses and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

28 U.S.C. § 1920.

ductions/printing costs, and (2) online document retrieval costs. Therefore, these two categories of costs, totaling $91.11, shall be taxed against Richardson.

The remaining "costs" requested by Tex–Tube are more properly categorized as related nontaxable expenses, as contemplated by Rule 54(d)(2). Under Rule 54(d)(2), related nontaxable expenses are to be considered in conjunction with attorney's fees and awarded in the same manner. Richardson does not specifically object to any of these related nontaxable expenses. Moreover, Tex–Tube has provided copies of their attorney's invoices, which document the billing of these related nontaxable expenses and, in an exercise of billing judgment, Tex–Tube has requested less than the amount actually billed. Taking all of this into consideration, the Court has reviewed these expenses and determines that they are reasonable and should be awarded to Tex–Tube. Therefore, the Court awards Tex–Tube taxable costs and related nontaxable expenses as follows:

| | |
|---|---|
| **Taxable Costs:** | $91.11 |
| **Nontaxable Expenses:** | $1,239.00 |
| **Total to be Awarded:** | $1,330.11 |

### III. CONCLUSION

Accordingly, the Court hereby

ORDERS that Defendant's Motion for Attorney's Fees and Costs (Document No. 32) is GRANTED IN PART and DENIED IN PART. The Court further

ORDERS that Tex–Tube Company be awarded attorney's fees in the amount of $8,150.00. The Court further

ORDERS that Tex–Tube Company's request for any attorney's fees in excess of the amount awarded is DENIED. The Court further

ORDERS that $91.11 in costs shall be taxed by the Clerk of the Court against Richardson, pursuant to Rule 54(a) of the Federal Rules of Civil Procedure. The Court further

ORDERS that Tex–Tube be awarded related nontaxable expenses in the amount of $1,239.00.

THIS IS A FINAL JUDGMENT.