Leonard B. BROWN, Jr. and Leonard B. Brown, III, Plaintiffs,

v.

The CITY OF DUNWOODY, et al., Defendants.

Civil Action No. 1:11–CV–2448–AT.

United States District Court, N.D. Georgia, Atlanta Division.

Signed March 9, 2015.

Leonard B. Brown, Jr., pro se.

Leonard B. Brown, III, Amanda R. Clark Palmer and Donald Franklin Samuel, Garland, Samuel & Loeb, P.C., for Plaintiffs.

Dawn N. Pettigrew and George Melton Mobley, Jr., Lokey, Mobley & Doyle, LLP, for Defendants.

### ORDER

AMY TOTENBERG, District Judge.

Plaintiff Leonard B. Brown, Jr. and his son, Plaintiff Leonard B. Brown, III filed this civil rights action *pro se,* alleging that the City of Dunwoody (the "City") and individual code enforcement or law enforcement officers violated Plaintiffs' constitutional rights in the manner they enforced the municipal land use code and in allegedly falsely arresting the two Browns. On summary judgment, the Court liberally construed Plaintiffs' Complaint to allege, among others, claims under 42 U.S.C. § 1983 for procedural and substantive due process violations and conspiracy. So construed, the Court dismissed those claims as unsupported by the record. The Court also dismissed Plaintiffs' claims under two criminal code sections, explaining that these criminal statutes do not provide a private right of action. The Court allowed Leonard B. Brown, III's false arrest claim to proceed to trial and appointed counsel for him. Shortly before trial, Mr. Brown, III and the Defendants notified the Court that they had settled the remaining claims.

The City of Dunwoody, and city officials Tom LaPenna, Michael Nier, Michael Tuller, and Brian Anderson (collectively the "City Defendants") have filed a Motion for Attorney's Fees [Doc. 74]. The City Defendants argue that Plaintiffs' substantive and procedural due process claims, conspiracy claim, and claims brought under the criminal code, were frivolous or groundless. They seek over $25,000 in fees.

Acknowledging that attorney's fees should rarely be awarded against *pro se* plaintiffs in civil rights actions, and weighing the equities in this case, the Court **DENIES** the City Defendants' Motion.

### I. BACKGROUND

Plaintiffs Dr. Leonard B. Brown, Jr. (Dr. Brown, Jr.) and his son, Leonard B. Brown, III ("Brown, III"), proceeding *pro se,* filed this lawsuit in July 2011. Although not entirely clear, Plaintiffs' allegations fit loosely into two categories: (1) claims arising out of alleged arbitrary and capricious code enforcement and (2) claims arising out of an alleged false arrest. The code enforcement allegations, however, seem to be, in Plaintiffs' minds, the precursor to the false arrest charge and thus part of one pattern of misconduct.

According to the "Preliminary Statement" at the outset of their Complaint, in early 2009, Plaintiffs "began receiving threatening notes, and strange, privacy invading photographs from officials of the City of Dunwoody, Georgia." (Compl. ¶ 2, Doc. 1.) Apparently, the City had cited Plaintiffs with code violations, and Plaintiffs found the citations "threatening and harassing." (*Id.*) Eventually, Dr. Brown, Jr. was ordered to appear at a hearing regarding the code enforcement violations. He failed to appear and thus a bench warrant was issued. Police officers then appeared at the Browns' home to serve the bench warrant for Dr. Brown, Jr. When officers arrived at the home, they instead

encountered Brown, III. During the encounter, Mr. Brown, III was arrested on a charge of obstruction after the Defendant officers broke down the Browns' door and entered the home without a warrant. Although Plaintiffs intimated that the City wrongfully withdrew a DeKalb County building permit, (*see id.* at 12), the clearest wrongful act in Plaintiffs' Complaint centered on this alleged assault and false arrest of Mr. Brown, III.[1] (*See id.* ¶¶ 4–5.) Plaintiffs seem to suggest that the City's pattern of harassment culminated in this false arrest.

A review of Plaintiffs' Complaint reveals that the *pro se* Plaintiffs did not understand the appropriate avenue for legal relief based on their allegations. Plaintiffs anchor their claims in several federal statutes including 42 U.S.C. § 1983 for violations of constitutional rights, 42 U.S.C. §§ 1981, 1985, and 1986 for race or other class-based discrimination, and two criminal code sections, 18 U.S.C. §§ 241 and 242. (*Id.* ¶ 1, 6.) The only arguable applicable statute, however, is 42 U.S.C. § 1983.

Defendants did not file a motion to dismiss. Instead, Defendants filed an Answer to the Complaint on October 4, 2011. The discovery period commenced thirty days later. *See* LR 26.2, NDGa. After Plaintiffs failed to comply with their discovery obligations in a number of respects, Plaintiffs finally sat for their depositions on September 28, 2012 and responded to Defendants' written discovery requests. Plaintiffs apparently did not engage in any discovery of their own.

On October 30, 2012, Defendants filed a motion for summary judgment. (Doc. 40.) Defendants argued first that Plaintiffs' Complaint should be dismissed for failing to plead sufficient facts to state a claim for

relief. (Doc. 40–1 at 7–9.) Defendants then quickly disposed of Plaintiffs' claims under the criminal code sections, articulating in two short sentences that such code sections do not authorize civil suits. (*Id.* at 17.) And Defendants likewise argued that Plaintiffs' claims under 42 U.S.C. §§ 1981, 1985, and 1986 are simply inapplicable to the facts in this case. (*Id.* at 17–19.) None of these arguments addressed the substance of Plaintiffs' allegations.

Defendants then challenged Plaintiffs' code enforcement claims. They first argued that the claims against the City should be dismissed because the record (1) lacked any "evidence of the existence of a policy that served as the driving force behind the plaintiffs' alleged constitutional violations" and (2) contained "no evidence that the City of Dunwoody had a custom or practice to ignore the commission of constitutional violations by its officials." (*Id.* at 13, 16.) They then asserted that the individual City Defendants were entitled to qualified immunity because Plaintiffs had failed to demonstrate that the code enforcement conduct was "plainly unjustified." (*Id.* at 20.) Defendants did not address any potential procedural due process challenge.

The rest of Defendants' memorandum of law asserted a qualified immunity defense to Plaintiffs' false arrest claims.

Plaintiffs' response to Defendants' Motion for Summary Judgment did little to clarify their claims against Defendants. (*See* Doc. 51.) Plaintiffs repeated many of the same assertions they alleged in their Complaint—that they had been threatened and harassed by the City under the guise of code enforcement, for example. They wagered that the City's mistreatment of them arose out of their public opposition to

---

1. Plaintiffs also make a passing reference to an arrest of Dr. Brown, Jr. (Compl. ¶ 2, Doc. 1 at 2.) The Court construed this as a false

arrest claim against Dr. Brown, Jr. but noted that it was unable to decipher a legal or factual basis for such a claim.

a plan to establish Dunwoody as a "pre-packaged city." (*Id.* at 2.) And they took issue with the City's code enforcement citations which failed to explain precisely how their property violated municipal code. As they articulated it, however, the abuse and harassment culminated in the false arrest of Mr. Brown, III. (*See id.* at 4–5.) Although their response brief had a paranoid dimension to it, Plaintiffs clearly expressed their contention that the arrest of Mr. Brown, III violated his constitutional rights. (*Id.* at 8–10.)

Defendants filed a reply brief. They attacked first Plaintiffs' invocation of "substantive due process rights" in the context of the alleged "false prosecution." (Doc. 59 at 3–4.) They argued that such claims should be analyzed under the Fourth Amendment instead. (*Id.*) They then reiterated their position that the City cannot be held liable based on the record. (*Id.* at 4–10.) And they concluded by articulating why the City's code enforcement officials and police officers are entitled to qualified immunity. (*Id.* at 11–15.) Defendants again did not identify a procedural due process claim.

The Court granted in part and denied in part Defendants' Motion for Summary Judgment. (Doc. 70.) Regarding Plaintiffs' code enforcement claims, the Court construed Plaintiffs' Complaint as asserting procedural due process, substantive due process, and conspiracy claims.[2] The record did not support any of these claims. In particular, the Court held that Plaintiffs could not bring a procedural due process claim based on the record because of the availability of adequate state remedies. And because Plaintiffs had not invoked a deprivation of a fundamental right, their claim of "arbitrary and capricious" code enforcement appeared redundant of their

procedural due process claim. In any case, the record contained no evidence that that the City cited Dr. Brown, Jr. for any nefarious reason, and instead, indicated that the City applied its building code against Plaintiffs' property in order to preserve the health, safety, and morals of the municipality. Finally, the record did not support a conspiracy to violate Plaintiffs' constitutional rights through arbitrary code enforcement. Although the Court liberally construed Plaintiffs' Complaint to assert these unsupported claims, it was never clear Plaintiffs in fact intended to bring such claims.

The Court then swiftly dismissed Plaintiffs' claims under the criminal code. And almost as swiftly, the Court dismissed Dr. Brown, Jr.'s false arrest claim, noting that it was not even clear Dr. Brown, Jr. intended to bring such a claim.

The Court then devoted most of its remaining analysis to Brown, III's false arrest claim. Most importantly, the Court concluded that the evidence, viewed in the light most favorable to Brown, III, supported his contention that his arrest was unlawful. For example, a reasonable jury could conclude that Brown, III had committed no crime outside his house and that Brown, III did not fail to comply with any of the officers' orders. The Court also rejected the Defendants' argument that exigency justified the officers' entry into Browns' home. The Court was particularly troubled by additional details in Brown, III's account which called into doubt the officers' true motivation for breaking down Browns' door. For example, Brown, III testified that when he was en route to the jail after his arrest, he overheard one officer say, "We will take him to jail, and when his dad comes to bail him out, then

---

**2.** The Court also addressed, and rejected, the possibility that, in connection with the alleged false arrest, Plaintiffs could bring a claim that

Mr. Brown, III's right to access to the courts under the Fourteenth Amendment had been denied. (Doc. 70 at 61–62.)

we will get him." (Brown, III Dep. 57:10–12, Doc. 43 at 57.) This fact and others led the Court to conclude that "[t]he totality of the evidence, as supplied by Mr. Brown, III's testimony and viewed in the light most favorable to Plaintiffs, implies that the officers may have been attempting to use Mr. Brown, III's arrest as a ploy to locate Dr. Brown, Jr." (Doc. 70 at 53.)

In sum, the Court allowed Brown, III's false arrest claim against two police officers to proceed. None of Plaintiffs' claims against the City or the City's code enforcement personnel survived summary judgment. The Court then appointed counsel for Mr. Brown, III. Mr. Brown, III ultimately settled the remaining claims.

In the meantime, the City Defendants (including the City of Dunwoody and city officials Tom LaPenna, Michael Nier, Michael Tuller, and Brian Anderson) filed a motion for attorney's fees under 42 U.S.C. § 1988. The City Defendants argue that they are entitled to attorney's fees because they prevailed on Plaintiffs' code enforcement claims and the claim under the criminal code. This motion is now ripe for review.

## II. LEGAL STANDARD

■ The Court is authorized under 42 U.S.C. § 1988 to award reasonable attorney's fees to the prevailing party in cases arising under civil rights laws, including 42 U.S.C. § 1983. Section 1988 is most often applied to award attorney's fees to the prevailing plaintiff in civil rights litigation, recognizing that the prevailing plaintiff has served "as a 'private attorney general,' vindicating a policy that congress considered of the highest priority." *Newman v. Piggie Park Enter., Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (per curiam); *accord Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 418, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (Title VII). The plaintiff

"should [therefore] ordinarily recover an attorney's fee from the defendant—the party whose misconduct created the need for legal action." *Fox v. Vice*, 563 U.S. 826, 131 S.Ct. 2205, 2213, 180 L.Ed.2d 45 (2011) (quoting *Christiansburg*, 434 U.S. at 416, 98 S.Ct. 694 (internal quotation marks omitted)).

When the prevailing party in a civil rights case is the defendant, however, "quite different equitable considerations" are at stake. *Christiansburg*, 434 U.S. at 419, 98 S.Ct. 694; *Fox v. Vice*, 563 U.S. 826, 131 S.Ct. 2205, 2213, 180 L.Ed.2d 45 (2011); *Hughes v. Rowe*, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Weighing these considerations, the United States Supreme Court held in *Christiansburg* that the district court may only award attorney's fees to a prevailing defendant in a civil rights action upon finding that the plaintiff's civil rights claim "was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg*, 434 U.S. at 422, 98 S.Ct. 694; *accord Fox*, 131 S.Ct. at 2213. The Court should, however, "resist the understandable temptation to engage in post hoc reasoning by concluding that because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Id.* at 421–22, 98 S.Ct. 694.

■ In determining whether a civil rights plaintiff's action was frivolous under *Christiansburg*, courts have considered "(1) whether the plaintiff established a *prima facie* case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." *Sullivan v. Sch. Bd. of Pinellas Cnty.*, 773 F.2d 1182, 1189 (11th Cir.1985) (outlining the above factors); *see also Vavrus v. Russo*, 243 Fed.Appx. 561, 563–64 (11th Cir. 2007) (affirming the award of attorney's

fees based on claims completely unsupported by the evidence, as demonstrated on summary judgment); *EEOC v. Pet, Inc.,* 543 F.Supp. 911 (M.D.Ala.1982) (holding that a voluntary dismissal in part made an award of fees to the defendant inappropriate), *aff'd,* 719 F.2d 383 (11th Cir.1983); *EEOC v. L.B. Foster Co.,* 123 F.3d 746 (3d Cir.1997) (holding that the district court's award of attorney's fees was an abuse of discretion, even though the court had granted summary judgment to the defendant, because the EEOC had presented a prima facie case with credible evidence to support its claims). The prevailing civil rights "defendant bears the burden of proving that the claim was meritless—an analysis independent of the dismissal." *Richardson v. Tex–Tube Co.,* 843 F.Supp.2d 699, 706 (S.D.Tex.2012) (citing *Hidden Oaks Ltd. v. City of Austin,* 138 F.3d 1036, 1053 (5th Cir.1998)).

▆▆▆ The Court should rarely impose attorney's fees against a *pro se* civil rights plaintiff. *See Hughes,* 449 U.S. at 15, 101 S.Ct. 173.

> Faithful adherence to the principles of *Haines v. Kerner* [404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) ] dictates that attorney's fees should rarely be awarded against [*pro se* ] plaintiffs. An unrepresented litigant should not be punished for his failure to recognize subtle factual or legal deficiencies in his claims. As the Court noted in *Christiansburg,* even if the law or the facts are somewhat questionable or unfavorable at the outset of litigation, a party may have an entirely reasonable ground for bringing suit.

*Id.; see, e.g., Harris v. Georgia Dep't of Corrections,* No. 7:03–CV–33 (HL), 2006 WL 3762067, at *2 (M.D.Ga. Dec. 20, 2006) (holding that even though the pro se plaintiff's evidence came up short, his complaint was not frivolous or without foundation, noting that the majority of his claims survived frivolity screening and two independent motions to dismiss); *Rubenstein v. Bauman,* No. 1:07–cv–798–MHT, 2008 WL 150057, at *5 (M.D.Ala. Jan. 14, 2008) (adopting a magistrate judge's report and recommendation, declining to impose attorney's fees on *pro se* civil rights plaintiff considering, among other facts the "possible chilling effect on the enforcement of civil rights"). Indeed, the Court is empowered to deny a request for attorney's fees where "special circumstances" which would render the award of attorney's fees unjust. *See Morrow v. Dillard,* 580 F.2d 1284, 1300 (5th Cir.1978) (citing *Newman v. Piggie Park Enterps., Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968)).

### III. ANALYSIS

Given the Plaintiffs' *pro se* status from the inception of this case through summary judgment, and considering the record, the Court finds that taxing Plaintiffs with any portion of the City Defendants' attorney's fees would be unjust. The Court reaches this conclusion for several reasons.

▆▆▆ First, Plaintiffs' Complaint and subsequent fillings indicate that they reasonably believed a legal or constitutional violation had occurred. Although Plaintiffs complained of many instances of "harassment" before the alleged unlawful arrest of Brown, III, it was the alleged false arrest of Brown, III that prompted this lawsuit. It is also apparent that Plaintiffs believed, not unreasonably, that the arrest of Brown, III was the natural extension of the alleged harassment that preceded it. Accordingly, Plaintiffs' hunch that the false arrest and the preceding code enforcement actions were, taken together, grounds for a civil rights lawsuit, was not frivolous or groundless.

Second, Plaintiffs proceeding *pro se,* cannot be expected to know precisely how

to articulate the alleged constitutional violation here, nor are they required to reference the proper code section when pleading or litigating their case. Thus, although the Court liberally construed Plaintiffs' Complaint to assert procedural due process, substantive due process, and conspiracy claims, the Court cannot discern from the Plaintiffs' filings whether Plaintiffs in fact sought to bring such claims. It is possible Plaintiffs alleged the abusive code enforcement practices to provide context to what they believed was an unconstitutional arrest of Brown, III. Although Defendants defended these presumed code enforcement claims at their expense, the Court finds it inequitable to impose attorney's fees under these circumstances.[3]

■ Finally, to the extent Plaintiffs intended to bring separate claims based on the City's code enforcement conduct, the Court cannot fault Plaintiffs for misunderstanding due process jurisprudence. Plaintiffs believed they were mistreated in the enforcement of code violations, and they may or may not have been. But Plaintiffs failed to appreciate that establishing a substantive due process violation requires more than proving mistreatment that is "lamentable." *See McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir.1994). Absent a violation that implicates constitutional rights that are absolute, even arbitrary and irrational government action might survive constitutional scrutiny. *See Greenbriar Village, LLC v. Mountain Brook City*, 345 F.3d 1258, 1263 (11th Cir. 2003). That these *pro se* Plaintiffs misunderstood this nuance of a due process claim is not surprising. Plaintiffs were thus required to utilize the adequate state procedural remedies available. Plaintiffs failed to do so, but this too is understandable given their apparent belief that the arrest of Brown, III was the last straw in a long history of mistreatment. Under these circumstances, although Plaintiffs offered no evidence to support any possible procedural and substantive due process claims, the Court finds it inequitable to impose the cost of Defendants' attorney's fees to defend these or other claims.

## IV. CONCLUSION

In light of Plaintiffs' *pro se* status during the relevant portions of this case, and for the reasons expressed above, the Court **DENIES** Defendants' Motion for Attorney's Fees [Doc. 74] and **DENIES AS MOOT** Plaintiffs' Motion to Dismiss Defendants' Motion for Attorneys' Fees [Doc. 130].

**IT IS SO ORDERED.**

---

**3.** Defendants may have been able to avoid some of the expense of defending the code enforcement claims by moving for a more definite statement or moving to dismiss the Complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure. And although Defendants incurred only nominal attorney's fees associated with defending the claims brought under criminal statutes, it is striking that they would even seek such fees given the obviousness that Plaintiffs simply erroneously invoked the criminal code.