719 F.2d 383
 33 Fair Empl.Prac.Cas. 1520,
32 Empl. Prac. Dec. P 33,902
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, On Behalf of Itself
and a Class of Persons Herein Delineated, Plaintiff-Appellee,
v.
PET INCORPORATED, FUNSTEN NUT DIVISION, Defendant-Appellant.
 No. 82-7373.
 United States Court of Appeals,
Eleventh Circuit.
 Nov. 7, 1983.
 
 Ann Margaret Pointer, Robert John Bekken, Atlanta, Ga., for defendant-appellant.
 Dianna B. Johnston, EEOC, Washington, D.C., for plaintiff-appellee.
 Appeal from the United States District Court for the Middle District of Alabama.
 Before GODBOLD, Chief Judge, RONEY and SMITH*, Circuit Judges.
 PER CURIAM:
 
 
 1
 AFFIRMED on the opinion of the district court, 543 F.Supp. 911, a copy of which is attached as an appendix.
 
 APPENDIX
 OPINION
 
 2
 VARNER, Chief Judge.
 
 
 3
 This cause is before the Court on motion for award of attorneys' fees as part of costs and on a petition for award of costs, filed herein April 28 and 8, 1982, by Defendant Pet. Upon consideration of the motion for award of attorneys' fees, this Court reluctantly declines to award attorneys' fees to Pet. This Court will also deny the petition.
 
 
 4
 STANDARD. The standard which must be utilized to determine whether attorneys' fees should be awarded Pet is provided by the Supreme Court's interpretation of congressional intent in passing 42 U.S.C. Sec. 2000e-5(k). That section reads as follows:
 
 
 5
 "In any action or proceeding under this subchapter the Court in its discretion, may allow the prevailing party[1], other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."
 
 
 6
 In Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1977), the United States Supreme Court interpreted that section to mean that a dual standard is to be applied in awarding attorneys' fees to a prevailing party. One standard applies to a prevailing plaintiff and another standard applies to a prevailing defendant.[2] In determining whether attorneys' fees should be awarded to a prevailing defendant, the inquiry prescribed by the Supreme Court requires the Court to find whether a plaintiff's claim "was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Christiansburg, supra, at 422, 98 S.Ct. at 701.
 
 
 7
 The manner in which this standard should be applied was further qualified in Christiansburg. The Court cautioned a district court to:
 
 
 8
 "resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit."
 
 
 9
 In order for this Court to objectively apply the foregoing standard after a case such as this has been voluntarily dismissed in part and involuntarily dismissed in part and when the evidence upon which the case was based appears so flimsy, this Court feels it must view the available evidence and the applicable law in a manner most favorable to Plaintiff. Such an approach appears to inhere in the Supreme Court's caveat concerning post hoc reasoning. Furthermore, as required by the Supreme Court standard, this Court must view the available evidence and applicable law as it existed at the time of the institution of the suit and as it developed as the case proceeded. With the foregoing standards of analysis in mind, the Court now proceeds to apply those standards to the instant case.
 
 
 10
 PLAINTIFF'S CONTENTIONS. Pet's motion for an award of attorneys' fees, the response to the motion for attorneys' fees, and the original complaint make it clear that Plaintiff's case has all along rested on three primary contentions: first, that Pet discriminated against black employees on the basis of their race with respect to segregated department and job classifications; second, that Pet discriminated against black employees on the basis of their race by maintaining segregated facilities; and, third, that Pet discriminated against black employees on the basis of their race in its disciplinary policy relating to discharge.
 
 
 11
 PERDUE DISCHARGE. Elbert Perdue, a black employee, filed a charge, which was subsequently amended, with the Plaintiff, Equal Employment Opportunity Commission (EEOC), in which he alleged that he had been discriminatorily discharged because of race and that Pet maintained segregated facilities and departments. See, EEOC v. Pet, Inc., 612 F.2d 1001 (5th Cir.1980). Based on these charges by Perdue, the EEOC filed this suit as a class action. Although the case was filed as a class action, EEOC sought relief for Perdue on an individual basis. 612 F.2d at 1001. In addition, the evidence concerning Perdue's discharge was apparently intended to support EEOC's contention that Pet discriminated against blacks in its disciplinary discharge policy.
 
 
 12
 One question which must be addressed by this Court is whether the suit, insofar as it alleges discriminatory discharge of Perdue and discriminatory disciplinary discharge policies, was at its inception "frivolous" or otherwise unwarranted. EEOC's memorandum in opposition to Pet's earlier motion for summary judgment and award of attorneys' fees, filed herein July 13, 1981, cites evidence it alleges supported the suit insofar as it dealt with Perdue's discharge and with the allegation of class-wide discrimination in discharge policies. It is apparent that EEOC sought to establish a case of discriminatory treatment of Perdue in part by demonstrating that Pet's reason for discharging Perdue was pretextual.[3]
 
 
 13
 This Court eventually rejected EEOC's attempt to create a prima facie case of employment discrimination by attempting to demonstrate that the reason for the discharge was pretextual. The Court held that EEOC had failed to meet the fourth element of the Marks v. Prattco, 607 F.2d 1153 (5th Cir.1979), test, i.e., replacement by a nonminority,[4] and granted summary judgment for Pet.
 
 
 14
 The fact that this Court rejected EEOC's attempt to establish a prima facie case by seeking to demonstrate pretextual discharge does not mean that the case was, at its inception, or became at a later date, "frivolous, unreasonable, or groundless". First of all, "the burden of establishing a prima facie case of disparate treatment is not onerous." Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1980). Secondly, anticipating the articulated reason proffered for the discharge and attempting to demonstrate its pretextual nature may not appear to a plaintiff to be an unreasonable way in which to proceed to establish a case of discrimination. Jones v. Western Geophysical Co., 669 F.2d 280, 284 (5th Cir.1982). Such circumstances may in some cases, though not this one, give rise to an inference of unlawful discrimination. 450 U.S. at 253, 101 S.Ct. at 1093-94. Accordingly, it cannot be said that EEOC's suit, insofar as it dealt with Perdue's discharge or with class-wide discriminatory discharge policies, was "frivolous, etc." at its inception or that it became so at a later date prior to the Court's entry of summary judgment on the question of Perdue's discharge.
 
 
 15
 SEGREGATED DEPARTMENT AND JOB CLASSIFICATIONS. A second contention of EEOC was that Pet discriminated against blacks on the basis of their race by maintaining segregated department and job classifications. The employee roster of Pet's Andalusia facility (attached as Exhibit 10 to the Affidavit of J. Cecil Jones filed herein July 13, 1981), reveals that in 1973 there were at least five job classifications or departments that were composed only of white employees. Furthermore, the contentions of Pet contained in the February 26, 1982, pretrial order admit that no blacks have been employed in three departments.
 
 
 16
 EEOC apparently sought to demonstrate that the existence of subjective selection criteria caused a statistical disparity between the percentage of blacks in certain departments and the percentage of blacks in the relevant labor force within the relevant geographical area. See, Memorandum Opinion filed herein December 14, 1981. In this Court's December 14, 1981, Opinion, the Court rejected Pet's motion for summary judgment regarding the issue of segregated job classifications and departments. The Court recognized at that time that some statistical or other argument might be made based on the fact that some departments at certain times during the litigation did not have any black employees. Although this Court refused at that point to pass judgment on the statistical evidence without the aid of expert testimony, the Court certainly did not indicate that EEOC would be required to buttress its statistical evidence with expert analysis. To this Court's knowledge, there is no requirement that statistical evidence be supported by expert testimony.
 
 
 17
 While the factors pointed out by Pet and considered in the Court's December 14, 1981, Opinion are relevant in ascertaining the value of statistics in a case such as this, they were not necessarily fatal to EEOC's case. "Considerations such as small sample size" and evidence showing that "the figures for the general population might not accurately reflect the pool of qualified job applicants would * * * be relevant" and may "detract from the value of such evidence." International Brotherhood of Teamsters v. United States, 431 U.S. 324, 339-340, n. 20, 97 S.Ct. 1843, 1856-57, n. 20, 52 L.Ed.2d 396 (1976).
 
 
 18
 "Nevertheless, precise calculations of statistical significance are [not] necessary in employing statistical proof * * *." Hazelwood School District v. United States, 433 U.S. 299, 311, n. 17, 97 S.Ct. 2736, 2743, n. 17, 53 L.Ed.2d 768 (1976). Pet's argument would clearly have been relevant in rebuttal to EEOC's statistical proof. In the end, however, the usefulness of EEOC's statistics depended "on all of the surrounding facts and circumstances". 431 U.S. at 340, 97 S.Ct. at 1857.
 
 
 19
 Accordingly, this Court cannot say that EEOC's case was frivolous, unreasonable, or groundless or that EEOC continued to litigate after it clearly became so.
 
 
 20
 SEGREGATED FACILITIES. A third contention of EEOC was that Pet discriminated against black employees on the basis of their race with respect to segregated restroom facilities. Affidavits taken early in EEOC's investigation resulted in certain employees' and former employees' signing affidavits which stated that segregated restroom facilities were maintained in the Andalusia plant.[5] See, Exhibits to EEOC's July 13, 1981, memorandum in opposition to a motion for summary judgment. At the February 22, 1982, pretrial hearing, the parties settled this issue. Pet agreed to close, for a short period, one of the facilities allegedly set aside for use by employees of one race. This was done in order to discourage any residual adherence to long-discontinued racially-discriminatory practices.
 
 
 21
 Pet contends that its offer was made much earlier in this litigation; however, this Court does not recall such an offer being made and has not been able to locate any correspondence, etc., to objectively substantiate such a claim. Absent such objective proof, this Court is reluctant to find that EEOC maintained the suit on this point after it became unreasonable to do so. Furthermore, the Court cannot say, when it collectively considers all three allegations in the suit, the proof incident thereto, and the settlement of this particular point, that this case as to segregated facilities was frivolous at its inception. The evidence must be considered most favorably to Plaintiff.
 
 
 22
 CONCLUSION. Based on the foregoing, this Court declines to award attorneys' fees to Pet. This ruling should not, however, be construed as this Court's approbation of EEOC's conduct of this litigation. As this Court and the Court of Appeals noted early on in this case, the EEOC has exhibited an alarming unwillingness to be reasonable in its negotiations with Pet. See, Memorandum Opinion entered herein January 5, 1979; EEOC v. Pet, Inc., 612 F.2d 1001 (5th Cir.1980). Although this Court cannot say that the institution and maintenance of this suit was or subsequently became frivolous or unreasonable, it can be emphasized that it was perilously close to being so. In this Court's opinion, this case is a paradigm of the absolute minimum in probative evidence that can be adduced so as to avoid a holding that the suit was frivolous.
 
 
 23
 It is of great concern to this Court that the entire brute force of the United States Government can be brought to bear on an employer based on evidence of such a superficial nature. While zeal in ferreting out invidious discrimination is absolutely necessary, the EEOC must learn that an objective evaluation of evidence is required before a suit of this nature can appear to be maintained in unquestioned good faith. See, Christiansburg, supra, 434 U.S. at 423, n. 20, 98 S.Ct. at 701, n. 20, where the Court made it clear that distinctions between the EEOC and private litigants are relevant in determining the reasonableness of the EEOC's litigation efforts.
 
 
 24
 OTHER COSTS. This cause is also here on a petition for award of costs filed herein April 8, 1982. None of these costs are taxable under the general policies promulgated by this Court. Accordingly, the petition for costs will be denied.
 
 
 25
 An Order will be entered in accordance with the terms of this Opinion.
 
 
 26
 DONE this 16th day of July, 1982.
 
 
 
 *
 Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 For the purposes of this motion, the Court has assumed, without deciding, that Pet is the prevailing party
 
 
 [2]
 That Court thereby changed the rule of the Fifth Circuit Court of Appeals as expressed in United States v. Allegheny-Ludlum Industries, Inc., 558 F.2d 742 (5th Cir.1977), wherein that Court said the following: "We are unable to read the * * * language as intended by Congress to produce different results depending upon whether the 'prevailing party' is the plaintiff or the defendant. Instead, Congress by plain words rested such awards in the trial court's unfettered discretion. Had it wished that discretion to be exercised in a biased rather than an impartial manner, it could easily have said so and still can."
 
 
 [3]
 Pet contends that Perdue was discharged for sleeping on the job, yet affidavits of several employees provide some support for the contention that sleeping during break time was common on the night shift. See, Exhibits attached to the July 13, 1981, memorandum in opposition to Pet's motion for summary judgment
 
 
 [4]
 While subsequent clarification of Marks may cast doubt upon applicability of that reason to this case, subsequent facts have apparently justified the result
 
 
 [5]
 This Court is not fully convinced that the representations in those affidavits accurately reflected the employees' own thinking concerning this question. At any rate, there certainly are conflicts between the affidavits and subsequent depositions