**Waleed JARAYSI, Individual Yasmine's Entertainment Hall and Shadia's Restaurant, LLC, d/b/a/ Jaraysi's Entertainment Hall and Restaurant, Plaintiffs,**

v.

**CITY OF MARIETTA, GEORGIA, Charles C. Clay, and John Does I–XXX, Defendants.**

**Civil Action No. 1:12–CV–2104–AT.**

United States District Court, N.D. Georgia, Atlanta Division.

Signed March 25, 2014.

dant's sovereign immunity argument against remand. (Doc. 20 at 20.)

**1376**

A. Forrest Morad, A.F. Morad, P.C., Atlanta, GA, Haytham Faraj, The Law Offices of Haytham Faraj, Dearborn, MI, Nemer N. Hadous, Hadous 1 Co., PLLC, Mesa, AZ, for Plaintiffs.

Dana Kristin Maine, Freeman Mathis & Gary, James Monroe Dervin, Atlanta, GA, Daniel Walter White, Douglas R. Haynie, Haynie Litchfield Crane & White, Marietta, GA, for Defendants.

### ORDER

AMY TOTENBERG, District Judge.

Plaintiffs Waleed Jaraysi and his business, Yasmine's Entertainment Hall and Shadia's restaurant, filed suit in this Court in June 2012, alleging a due process claim under 42 U.S.C. § 1983 and several state law claims, all arising out of Defendant City of Marietta, Georgia's ("Marietta" or the "City") alleged misconduct involving their zoning applications and ultimate demolition of their property. The Court dismissed this action on the pleadings, holding that Plaintiffs' unsuccessful prior suit brought in the Superior Court of Cobb County ("Cobb County Action") precluded litigating their claims here. The Court did not reach the merits of Plaintiffs' claims.

Marietta now seeks to recover its attorney's fees and expenses as a prevailing party pursuant to 42 U.S.C. § 1988. For the reasons that follow, the Court **DENIES** Marietta's Motion for Attorney's Fees [Doc. 31].

### I. BACKGROUND

#### A. Factual Background[1]

In 2004, Plaintiff Waleed Jaraysi bought an abandoned Chili's Restaurant

---

1. The Court has previously detailed the factu-    al background of this case, as alleged by

in Marietta, Georgia to develop into a banquet and wedding hall (the "Property"). (Am. Compl. ¶ 13.) On or about December 28, 2004, Mr. Jaraysi applied for and was issued a building permit to modify the restaurant shell into a mixed-use development. (*Id.* ¶ 14.) Plaintiffs' permit application requested authorization to build an 8,700 square-foot addition to the building. (*Id.*) However, Plaintiffs' attached construction plans contemplated a 23,000 square-foot addition, and according to Plaintiffs, the City was aware of the discrepancy upon approval. (*Id.* ¶ 15.) Plaintiffs commenced construction in April 2005. (*Id.* ¶ 16.)

Several months later, Charles C. Clay[2] approached Mr. Jaraysi and expressed interest in purchasing the Property. (*Id.* ¶ 17.) Mr. Jaraysi refused to sell. (*Id.*) Shortly thereafter, a series of issues arose among the City, Mr. Clay, and Mr. Jaraysi that Plaintiffs attribute to Mr. Clay's political influence and interference.[3] Of note, the City (1) requested additional plans

from Plaintiffs, (2) instructed Mr. Jaraysi to apply for a variance related to parking space requirements, which it subsequently denied, and (3) issued a "stop work order" for Mr. Jaraysi's alleged non-compliance with City ordinances. (*Id.* ¶¶ 22, 24–27, 31.)

In December 2005, Mr. Jaraysi and the City met to discuss completion of the project. (*Id.* ¶ 33.) According to Plaintiffs, "in an apparent resolution, the City issued Jaraysi[ ] a temporary release of the stop work order." (*Id.*) By December 16, 2005, Mr. Jaraysi had agreed to reduce the size of the building, but two other "minor" issues relating to landscaping and the minimum setback remained. (*Id.* ¶¶ 34–35.) The City allegedly memorialized this agreement in an internal memorandum. (*Id.* ¶ 35.)

Despite this agreement, according to Plaintiffs, the City issued a notice to cease and desist from further work in January 2006. (*Id.* ¶ 33.) The Plaintiffs suggested that the City issued this notice in response

Plaintiffs in their Complaint and Amended Complaint, and incorporates much of this detail here. (*See* Dec. 21, 2012 Ord., Doc. 21. at 2–4; May 1, 2013 Ord. at 2–7, Doc. 30.)

2. The Court terminated Mr. Clay as a defendant on December 21, 2012 upon granting his Motion to Dismiss. (*See* Dkt.)

3. In particular, Plaintiffs had alleged in their initial Complaint that Brock Clay Government and Public Affairs ("Brock Clay"), an organization associated with Mr. Clay, contacted the City, notifying them of the square-foot discrepancy. (Compl. ¶ 18, Doc. 1.) The City then requested further plans from Jaraysi, identifying an issue regarding the number of parking spaces. (*Id.* ¶¶ 20–21.) The City informed Jaraysi that he would need to request a variance regarding the parking space requirements. (*Id.* ¶ 22.) Jaraysi requested the variance. (*Id.* ¶ 23.) Brock Clay opposed this request in an October 24, 2005 letter to the City. (*Id.* ¶ 24.) That same day, the city denied Jaraysi's request for variance. (*Id.*

¶ 25.) Then on December 12, 2005, Clay again allegedly approached Jaraysi seeking to buy the property, and again, Jaraysi declined the offer. (*Id.* ¶ 27.) At this point, Clay became upset. According to Plaintiffs, Clay told Jaraysi that he was previously the head of the "commission" and a Senatorial candidate. (*Id.* ¶ 27.) He then told him that (1) he would acquire the Property one way or another; (2) nobody says no to him; and (3) Jaraysi would be sorry. (*Id.*) The day after these statements, the City issued to Jaraysi "a stop work order ... due to 'non-compliance.' " (*Id.* ¶ 28.) Clay's final act, as alleged in the Complaint, was on or about December 22, 2005. Clay sent the City a letter that included a "purported objection letter from a neighbor who identified 'defects' in Jaraysi's existing site plan.' " (*Id.* ¶ 32.) As this final act of Mr. Clay, and the injuries it allegedly caused, occurred more than four years before Plaintiffs filed suit, the Court held that Plaintiffs' claims against Clay were barred by the statute of limitations. (Dec. 21, 2012 Ord. at 4–6.) Defendant Clay is not seeking attorney's fees.

to a correspondence from Mr. Clay identifying "defects" in Jaraysi's existing site plan. (*Id.* ¶ 36.) These defects, however, "regarded matters already resolved between Jaraysi[ ] and the City." (*Id.*) After an unsuccessful meeting with City officials, Jaraysi appealed the notice to cease and desist. (*Id.* ¶¶ 38–39.) The City denied this appeal. (*Id.* ¶ 39.)

Plaintiffs then submitted a new permit application in March 2006. (*Id.* ¶ 40.) Plaintiffs alleged that from this point the City intentionally "prevented the project from moving forward" and "delay[ed] and imped[ed] Jaraysi's progress for nearly two years." (*Id.* ¶¶ 40–41.) In particular, in late 2007, the City filed suit to demolish the incomplete structure on Plaintiffs' Property pursuant to the City's nuisance ordinance. (*Id.* ¶¶ 41–42.) The Marietta Municipal Court issued an Order of Demolition. (*Id.* ¶ 44.) Jaraysi appealed this decision to the Superior Court of Cobb County, which dismissed the appeal on procedural grounds. (*Id.* ¶ 45.) *See Yasmine's Entm't Hall v. City of Marietta,* 292 Ga.App. 114, 663 S.E.2d 741, 743 (2008). The Georgia Court of Appeals reversed, holding that Jaraysi was entitled to appeal the decision to the Superior Court. *Yasmine's Entm't Hall,* 663 S.E.2d at 743.

On remand, the parties engaged in mediation and eventually signed a settlement agreement. (Am. Compl. ¶¶ 47–49.) Pursuant to the mediation discussions and formal Settlement Agreement dated February 19, 2009, Mr. Jaraysi agreed (1) to convert his banquet hall project into an office building, and (2) to release his claims and right to sue. (*Id.*) In exchange, the City promised to (1) rezone the property to accommodate the office space, and (2) provide Plaintiffs fifteen (15) months to complete construction, thus establishing May 25, 2010 as the deadline for comple-

tion. (*See* City's Answer Ex. B, Doc. 22–2 ("Consent Order"), at 1.)

On February 25, 2009, six days after execution of the Settlement Agreement, the City rezoned Plaintiffs' Property and purportedly issued Mr. Jaraysi a "task list." (*Id.*; Am. Compl. ¶¶ 50–51.) Plaintiffs assert, without much explanation, that this list effectively ensured that construction of the project would not be completed by the Agreement's May 25, 2010 deadline. (Am. Compl. ¶¶ 50–51.)

On May 4, 2010, the City moved to enforce the settlement, but offered Plaintiffs a "Consent Order" that would extend Plaintiffs' deadline to complete construction. (*Id.* ¶¶ 52–54.) The Consent Order provided that Plaintiffs would have to recommence construction by June 25, 2010 and complete construction by November 29, 2010. (*Id.* ¶¶ 53–54.) Plaintiffs agreed to the Consent Order in open court, and the Cobb County Superior Court signed the Consent Order on May 10, 2010. (Consent Order, Doc. 22–2.)

Plaintiffs failed to secure a building permit, as required, before the June 25, 2010 deadline. (*Id.* ¶ 56.) Plaintiffs allege, however, that the permit was "unreasonably withheld," emphasizing that the City denied Mr. Jaraysi's request to meet, ignored his telephone calls, and required him to secure an appointment with a building department official who was not available until after the June 25, 2010 deadline passed. (*Id.* ¶¶ 56–57.)

Nonetheless, at that point, the City declared its intent to demolish the property, and on July 16, 2010, the City Council appropriated funds to begin demolition. (*Id.* ¶¶ 58–59.) According to Plaintiffs, the City also issued a press release declaring the property an "eyesore" and announcing its plans to demolish it. (*Id.* ¶ 60.)

Mr. Jaraysi objected to the demolition to no avail. (*Id.* ¶ 61.) Thus, on the eve of demolition, July 19, 2010, Mr. Jaraysi filed an Emergency Verified Complaint in the Superior Court of Cobb County ("Cobb County Action"). According to the Verified Complaint, Mr. Jaraysi sought (1) a temporary injunction to prevent demolition, (2) a declaration that the Consent Order was unenforceable, (3) a declaration of Plaintiffs' property rights, and (4) other "just and proper" relief. (*Id.* ¶¶ 61–62.; City's Answer Ex. C, Doc. 22–3 ("Emergency Verified Compl."), at 12 and ¶¶ 45, 53.) Among Mr. Jaraysi's legal assertions, he alleged that the City's actions amounted to an "illegal taking . . . without authority or compensation, in violation of the Fifth Amendment to the United States Constitution." (Emergency Verified Compl. ¶ 45.)

The City counterclaimed to prevent Mr. Jaraysi from interfering with the demolition. (Am. Compl. ¶ 62.) After hearing oral argument, the trial court denied Plaintiffs' request for injunctive relief and issued a second order to enjoin Plaintiffs from interfering with the demolition on July 26, 2010. (*Id.* ¶ 65.) The Georgia Court of Appeals summarily affirmed the trial court's judgment, and the Supreme Court of Georgia denied Plaintiffs' certiorari petition. (*Id.* ¶ 65.)

## B. The Current Action

On June 19, 2012, two years from the day Plaintiffs initiated the emergency Cobb County Action, Plaintiffs filed a Complaint in this Court naming the City and Mr. Clay as Defendants. Mr. Clay filed a Motion to Dismiss, invoking the statute of limitations, arguing that all claims against him were time-barred.

(Mot. Dismiss, Doc. 11.) The Court agreed and on December 21, 2012, dismissed Plaintiffs' claims against him. (Dec. 21, 2012 Ord., Doc. 21.)

Plaintiffs' remaining claims against the City, asserted in an Amended Complaint, included: (1) a claim under 42 U.S.C. § 1983 alleging that the City unreasonably withheld the requisite permits to complete construction, brought a meritless nuisance action, and improperly induced Mr. Jaraysi to enter into the Settlement Agreement; (2) a fraudulent misrepresentation claim based on allegations that the City misrepresented its intent to rezone the property;[4] (3) a breach of contract claim arising out of the City's alleged refusal to review, reject, or approve all Plaintiffs' project-related documents; and (4) a conspiracy claim premised on the City and Mr. Clay's alleged collusion ultimately resulting in the demolition of Plaintiffs' property.

On December 21, 2012, the City moved for judgment on the pleadings. (Doc. 23.) The City argued primarily that Plaintiffs' claims were barred by the doctrine of res judicata. In the alternative, the City asserted that (1) Plaintiffs failed to state a § 1983 due process claim because they had no cognizable property interest; (2) Plaintiffs' § 1983 claim was barred to the extent it was premised on actions occurring prior to June 19, 2010; (3) Plaintiffs' fraudulent misrepresentation claim was not pled with particularity; and (4) Plaintiffs' fraudulent misrepresentation claim necessarily fails because the City was not served with a timely *ante litem* notice, as required under Georgia law. Defendants also argued that Plaintiffs failed to allege an underlying tort to support their conspiracy claim and

---

**4.** Plaintiffs' allegation in ¶ 76 of the Amended Complaint contradicts the terms of the signed Consent Order, which indicate that the City rezoned Plaintiffs' property in accordance with the Settlement Agreement on February 25, 2009 pursuant to Marietta Rezoning Case Number 20090031. (Consent Order, at 1.)

in any case, the City cannot ordinarily be included as a party to a conspiracy.

In response, Plaintiffs abandoned their conspiracy claim against the City but maintained that their action was not barred by res judicata, that their § 1983 and fraudulent misrepresentation claims were adequately pled, and that, by filing suit in state court, they satisfied the *ante litem* requirements under Georgia law. (Doc. 25.)

On May 1, 2013, the Court dismissed all of Plaintiffs' claims as barred by the doctrine of res judicata, and thus did not consider the City's remaining arguments and did not reach the merits of Plaintiffs' claims. The Court explained that res judicata, under Georgia law, precludes relitigating claims that could have brought in a previous case between identical parties which was finally adjudicated on the merits by a court of competent jurisdiction. *See Waldroup v. Greene Cnty. Hosp. Auth.*, 265 Ga. 864, 463 S.E.2d 5, 7 (1995); *Starship Enterprises of Atlanta, Inc. v. Coweta Cnty.*, 708 F.3d 1243, 1253 (11th Cir.2013). Plaintiffs conceded that the parties were identical in both actions and that the previous adjudication on the merits was by a court of competent jurisdiction.[5] Thus, the Court considered whether the two actions brought identical causes of action for purposes of res judicata.

The Court held that the claims in both suits arose out of the same subject matter because they shared a "common nucleus of operative fact." *Hill v. Wooten,* 247 Ga. 737, 279 S.E.2d 227, 228 (1981) (citing *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Neely v. City of Riverdale,* 298 Ga.App. 884, 681 S.E.2d 677, 680 (2009)). The Court explained that in this action, as in the Cobb County Action, Plaintiffs maintained that the Settlement Agreement and Consent Order vested the City with unlimited discretion and that the City improperly exercised that discretion to deprive Plaintiffs of the use of their property. In particular, in both actions, Plaintiffs noted that the City rejected Plaintiffs' permit applications at various stages of development and instituted a groundless nuisance action. Moreover, in both actions, Plaintiffs asserted a claim under the due process clause of the United States Constitution. The Court rejected Plaintiffs argument that the prior action and the current one were factually distinct in a material way.[6] Relying on the principles of res judicata under Georgia law, and in particular, the Eleventh Circuit's recent application of these principles to circumstances analogous to this case, the Court dismissed all Plaintiffs' claims as precluded.

### C. The City's Motions for Attorney's Fees

After the City prevailed in the Cobb County Action, it filed a Motion for Attorney's Fees in that court on September 18, 2012. (Sept. 18, 2012 Mot. Attorney's Fees, Cobb Cnty. Action, Doc. 42–8.) The City argued to the Cobb County Superior Court that Plaintiffs claims "lacked any

---

**5.** More accurately, Plaintiffs did not address these two elements in response to the City's Motion for Judgment on the Pleadings, but Plaintiffs now explain that it did not address these elements because they were not seriously in contention. (Pl. Resp. Mot. Attorney's Fees at 3, Doc. 33.)

**6.** Plaintiffs also appeared to argue that that they could not have brought any other claims in their Cobb County Action because that action was somehow jurisdictionally limited to Plaintiffs' demand for immediate injunctive relief. Plaintiffs were mistaken. The Superior Court of Cobb County had the authority to hear and award substantive relief for all of the claims Plaintiffs brought in this action.

basis in law or fact" and thus, it was entitled to attorney's fees under O.C.G.A. § 9–15–14(a). (*Id.* at 4–5.) The City alternatively argued that O.C.G.A. § 9–15–14(b) entitled it to recoup attorney's fees because Plaintiffs' claims "lack[ed] any substantial justification" and were "asserted for the purpose of delay or harassment." (*Id.* at 6–7.)

On November 7, 2012, the Cobb County Superior Court granted the City's Motion for Attorney's fees. (Mot. Attorney's Fees Ex. A, Doc. 31–1.) The court agreed that Plaintiffs "had no justifiable issue of law or fact and brought *this* action completely without legal cause." (*Id.* ¶ 12 (emphasis in original).) In particular, the court explained that the Settlement Agreement was agreed to, freely and voluntarily, by all parties present in open court. (*Id.*) The court also found that Plaintiffs' efforts to delay enforcement of the Agreement by petitioning for a modification of the deadlines were groundless. (*Id.* ¶¶ 13, 16) "The Plaintiffs sought a delay and change in deadlines for work on the structure without legal basis," the court stated, "and, in an attempt to harass and cajole the Defendant into renegotiating the binding agreement." (*Id.* ¶ 16.) On this basis, the court awarded the City $47,500 in attorney's fees. (*Id.* ¶¶ 25–26.)

Shortly after the City prevailed on its Motion for Attorney's Fees in the Cobb County Action in November, this Court entered its December Order dismissing all claims against Defendant Clay. Then, as previously noted, on December 21, the City moved for judgment on the pleadings. The Court ruled on this motion on May 1, 2013, and on May 16, the City filed the instant Motion for Attorney's Fees. The City's sole basis for recovering its attorney's fees is its status as a prevailing party under 42 U.S.C. § 1988. The City does not seek fees under state law.[7]

## II. ANALYSIS

### A. Award of Fees Under § 1988

The Court is authorized under 42 U.S.C. § 1988 to award reasonable attorney's fees to the prevailing party in cases arising under civil rights laws, including 42 U.S.C. § 1983. Section 1988 is most often applied to award attorney's fees to the prevailing plaintiff in civil rights litigation, recognizing that the prevailing plaintiff has served "as a 'private attorney general,' vindicating a policy that congress considered of the highest priority." *Newman v. Piggie Park Enter., Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (per curiam); *accord Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 418, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) (Title VII). The plaintiff "should [therefore] ordinarily recover an attorney's fee from the defendant—the party whose misconduct created the need for legal action." *Fox v. Vice*, —— U.S. ——, 131 S.Ct. 2205, 2213, 180 L.Ed.2d 45 (2011) (quoting *Christiansburg*, 434 U.S. at 416, 98 S.Ct. 694 (internal quotation marks omitted)).

When the prevailing party in a civil rights case is the defendant, however, "quite different equitable considerations" are at stake. *Christiansburg*, 434 U.S. at 419, 98 S.Ct. 694; *Fox v. Vice*, —— U.S. ——, 131 S.Ct. 2205, 2213, 180 L.Ed.2d 45

---

7. The City also argues that Plaintiffs' state law claims were frivolous, but as the City moves for attorney's solely under 42 U.S.C. § 1988, the Court need only consider whether the federal civil rights claims were frivolous. *See McGregor v. Bd. of Cnty. Commr's for Palm* *Beach Cnty., Fla.*, 130 F.R.D. 464, 467–68 (S.D.Fla.1990) (analyzing attorney's fee request under § 1988 for defendant's success on the federal civil rights claims separately from the request under state law).

(2011); *Hughes v. Rowe*, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Weighing these considerations, the United States Supreme Court held in *Christiansburg* that the district court may only award attorney's fees to a prevailing defendant in a civil rights action upon finding that the plaintiff's civil rights claim "was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Christiansburg*, 434 U.S. at 422, 98 S.Ct. 694; *accord Fox*, 131 S.Ct. at 2213. The Court should, however, "resist the understandable temptation to engage in post hoc reasoning by concluding that because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Id.* at 421–22, 98 S.Ct. 694.

■ In determining whether a civil rights plaintiff's action was frivolous under *Christiansburg*, courts have considered "(1) whether the plaintiff established a *prima facie* case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." *Sullivan v. Sch. Bd. of Pinellas Cnty.*, 773 F.2d 1182, 1189 (11th Cir.1985) (outlining the above factors); *see also EEOC v. Pet, Inc.*, 543 F.Supp. 911 (M.D.Ala.1982) (holding that a voluntary dismissal in part made an award of fees to the defendant inappropriate), *aff'd*, 719 F.2d 383 (11th Cir.1983); *EEOC v. L.B. Foster Co.*, 123 F.3d 746 (3d Cir.1997) (holding that the district court's award of attorney's fees was an abuse of discretion, even though the court had granted summary judgment to the defendant, because the EEOC had presented a prima facie case with credible evidence to support its claims). The prevailing civil rights "defendant bears the burden of

proving that the claim was meritless—an analysis independent of the dismissal." *Richardson v. Tex–Tube Co.*, 843 F.Supp.2d 699, 706 (S.D.Tex.2012) (citing *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1053 (5th Cir.1998)).

■ A federal civil rights claim that is dismissed as barred by the doctrine of res judicata is not necessarily a frivolous claim for purposes of § 1988. *See, e.g., Jones v. Texas Tech Univ.*, 656 F.2d 1137, 1145–46 (5th Cir. Unit A Sept. 25, 1981);[8] *Dubuc v. Green Oak Tp.*, 312 F.3d 736, 755 (6th Cir.2002) (reversing an award of attorney's fees finding that the claim preclusion issue that ultimately killed plaintiff's case was "not clear cut"); *Cascella v. Canaveral Port Dist.*, No. 604CV1822ORL19DAB, 2006 WL 66719, at *5 (M.D.Fla. Jan. 10, 2006); *Webber v. Mills*, 597 F.Supp. 316, 318–19 (S.D.Fla.1984).

In *Webber*, the district court articulated the "tension between the doctrine of res judicata and the manner of awarding attorney's fees in civil rights cases." *Webber*, 597 F.Supp. at 318–19. The plaintiff brought a state court action and subsequently a federal civil rights action, both arising out of the same facts and circumstances and implicating the same rights. *Id.* at 317–18. While the plaintiff's federal action was pending, the state appellate court rejected her claims, thus triggering a res judicata effect warranting dismissal of her federal action. *Id.* at 318. The defendants moved for attorney's fees on this basis alone, and the court denied their motion. "The doctrine of res judicata," the court explained, "operates to bar litigation of matters that, inter alia, should have been raised in the prior proceeding. Dismissal of a suit on these grounds does not

**8.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

necessarily mean that the second suit was groundless; rather, it suggests that judicial economy and fairness compelled dismissal of the subsequent action." *Id.* at 318. The court then went further to note that "[e]ven if the merits of the second suit are somewhat tenuous, one must remember that civil rights cases require special care because a person's constitutional rights hang in the balance." *Id.* Finding that "plaintiff's original suit does not appear to have been frivolous, at least when viewed as it existed at the time the action was instituted," the court declined to grant the defendants' request for attorney's fees. *Id.* at 319; *see also Cascella*, 2006 WL 66719, at \*5 (recognizing that res judicata "involve[s] a complex analysis of subtle legal deficiencies that many lawyers do not fully comprehend" and thus concluding that "[a]warding attorneys' fees on the basis of the fact that the suit was dismissed based largely on the application of res judicata would be an incorrect application of the legal standard on frivolous suits under 42 U.S.C. section 1988") (citing *Chester v. St. Louis Housing Auth.*, 873 F.2d 207, 209 (8th Cir.1989)).

This is not to say that the Court is barred from ordering a plaintiff to pay a defendant's attorney's fees where the dispositive res judicata issues were clear at the outset. *See, e.g., Offord v. Parker*, 456 Fed.Appx. 472, 474–75 (5th Cir.2012) (affirming district court's award of attorney's fees which was premised in part on a conclusion that "[r]elitigating a claim that has been barred by res judicata is frivolous"); *Levy v. City of Cherry Hills Village*, 666 F.Supp. 201, 203 (D.Colo.1987) (awarding defendant attorney's fees under § 1988, stating that plaintiff's "lawsuit is a complete regurgitation of issues decisively resolved long ago"); *Fellowship Baptist Church v. Benton*, 815 F.2d 485, 499 (8th Cir.1987) ("Litigation which presents only claims which have been previously rejected and which is brought against a party in no position to change the law short of an 'informal accommodation' is, in our view, vexatious and unreasonable.").

In this case, however, not even the Defendant argues that dismissal on res judicata grounds warrants an award of attorney's fees. (Def. Reply at 2 and n. 5, Doc. 38.) Nor could it. Although Plaintiffs ultimately came up short in their effort to avoid res judicata preclusion, Plaintiffs' last ditch effort to have the merits of their federal constitutional claims actually, expressly decided by a court of competent jurisdiction is understandable. Indeed, the Cobb County Superior Court did not address Plaintiffs' due process Fifth Amendment takings claim in its order of dismissal. Perhaps this was because Plaintiffs failed to satisfactorily tee up the issue for consideration, and in any case, Plaintiffs apparently failed to cogently argue in their appeal to the Georgia Court of Appeals why the due process claim should have prevailed. In any event, Plaintiffs' arguments against res judicata, though extremely weak, were not completely groundless. Accordingly, the Court will not grant attorney's fees without first considering whether Plaintiffs' underlying § 1983 claim was frivolous. And as explained next, the odd posture of this case makes it difficult for the Court to award attorney's fees pursuant to 42 U.S.C. § 1988.[9]

The City argues that it is entitled to attorney's fees because Plaintiffs' § 1983 due process claim was wholly without merit and almost entirely time-barred. Plaintiffs' Amended Complaint does not precisely make clear the basis for Plaintiffs' due process claim and whether they proceeded

---

**9.** The City did not move for attorney's fees under state law.

on a theory of procedural or substantive due process. (*See* Am. Compl. ¶¶ 67–74.) However, the City assumed that Plaintiffs' due process claim alleged a violation of their substantive due process right to a building permit, and on that basis, moved for judgment on the pleadings. (Def. Br. Supp. Mot. Judgment Pleadings at 14–15 and n. 2, Doc. 23–1.) The City argued that because Plaintiffs had no cognizable property interest in a building permit, the City's interference with Plaintiffs' ability to get the permit and build their structure cannot trigger a substantive due process claim. (*Id.* (citing *Greenbriar Village, LLC v. Mountain Brook, City,* 345 F.3d 1258, 1262–63 (11th Cir.2003)).)

Plaintiffs' response to the City's argument was weak but indicated that their claim was not precisely as the City had articulated. (Pls. Resp. Mot. Judgment Pleadings at 15, Doc. 25.) Plaintiffs asserted that their "principal contentions" were that (1) Plaintiffs were "singled out" and (2) the "City's demolition was an improper exercise of police power constituting a taking and deprivation of Property in violation of the United States Constitution." (*Id.* (citing Am. Compl. ¶¶ 73–74).) Plaintiffs appeared to anchor their § 1983 claim on the contention that the City contracted with Plaintiffs, agreeing to ward off demolition so long as Plaintiffs began construction by June 25, 2010, but then made it impossible for Plaintiffs to meet this deadline by unreasonably blocking Plaintiffs from necessary meetings with

city officials and then withholding the building permit necessary to begin construction. (Am. Compl. ¶¶ 56–57.) As a result, Plaintiffs alleged, the City unfairly proceeded to demolish their property. According to Plaintiffs, this demolition amounted to an unconstitutional taking in violation of the Fifth Amendment.

The City did not challenge this precise theory of § 1983 liability on its Motion for Judgment on the Pleadings, and the Court did not consider it in light of the res judicata bar to Plaintiffs' claims. The Court dismissed this action, and because the res judicata issues barred Plaintiffs' claims—whether or not they were otherwise legally or factually tenable—the Court had no reason to grant Plaintiffs an opportunity to replead. However, given the allegations of the City's wrongdoing, had the Court reached the sufficiency of Plaintiffs' § 1983 claim, it would have granted Plaintiffs one opportunity to replead, as it typically does for many complainants. As it stands, Plaintiffs have not expressly been given this opportunity.

The City reiterates in its Motion for Attorney's Fees that it viewed Plaintiffs' § 1983 claim as one premised on simply the denial of a building permit. (*See* Mot. Attorney's Fees at 7, Doc. 31 (citing *Head v. Medford,* 62 F.3d 351 (11th Cir.1995) (holding that a constitutional claim based on a non-existent property interest was legally groundless)).)[10] But again, the City does not address the legal viability of

10. The City also reaffirmed its position that the § 1983 claim was largely time-barred. In response, Plaintiffs agreed that their § 1983 claim is barred to the extent it relies on any acts occurring prior to June 19, 2010, which eliminates from consideration most of Plaintiffs' allegations, including assertions that (1) the City fraudulently induced Plaintiffs into entering into the Settlement Agreement in February 2009; (2) the City placed unconstitutionally unreasonable demands on Plaintiffs

making it impossible for Plaintiffs to complete construction by the agreed upon deadline in May 2010; and (3) the City fraudulently induced Plaintiffs into agreeing to a consent order in May 2010. Plaintiffs' remaining relevant allegation, however, is that, after agreeing not to demolish Plaintiffs' property as long as Plaintiffs begin construction, the City unreasonably withheld the building permit in an effort to proceed with demolition anyway.

Plaintiffs' precise contentions: that the City's conduct amounted to a constitutional violation when, after agreeing in open court to refrain from demolishing Plaintiffs' property on the condition that Plaintiffs begin construction, the City withheld Plaintiffs' building permit so Plaintiffs could not possibly satisfy that condition.

For their part, Plaintiffs offer no meaningful response to the City's substantive § 1983 argument in the Motion for Attorney's Fees and instead simply reaffirm that their claim is a "takings" claim arising out of essentially arbitrary and capricious conduct resulting in the demolition of their Property. (*See* Pl. Resp. Mot. Attorney's Fees at 6, Doc. 33 (stating that their takings claim was based not on the denial of a building permit" but rather on the "City's destruction of his building").) Plaintiffs do not, for example, argue that they had a constitutionally cognizable property interest in the building permit or provide additional factual allegations to support the conclusion that the demolition was in fact an unconstitutional taking of their Property. This was a mistake or failure for sure. But given the posture of this case, Plaintiffs evidently did not realize that their response to Defendant's Motion for Attorney's Fees provided them a chance to offer additional factual allegations and legal authority to show that their claim was not completely groundless. This is not to say that Plaintiffs would succeed in providing colorable legal support for their constitutional claim, even with additional factual allegations. Cursory review of case law in this area suggests that Plaintiffs may in fact have no legal footing to stand on. *See Reahard v. Lee Cnty.*, 968 F.2d 1131, 1135–36 (11th Cir.1992) (discussing the second test to apply in a takings claim, whether a regulatory act denies the owner economically viable use of his property); *Johnson v. City of Prichard*, 771 F.Supp.2d 1310, 1319 (S.D.Ala.2011) ("[A]

municipality's destruction of private property without compensation will not violate the Fifth Amendment so long as the destruction was being exercised reasonably and within the limits of public necessity."); *see also Greenbriar Vill.*, 345 F.3d at 1262–63 ("[N]on-legislative deprivations of state-created rights, which would include land-use rights, cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted arbitrar[ily] and irrationally.").

Nonetheless, the Court finds it inequitable to award the City attorney's fees under § 1988 without at least giving the Plaintiffs one last chance to explain themselves. *See Christiansburg*, 434 U.S. at 421, 98 S.Ct. 694 ("Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit."). In particular, given that it is the City's burden to establish that Plaintiffs' § 1983 claim was groundless, and the City failed to directly challenge Plaintiffs' precise theory of takings liability, the Court **DENIES WITHOUT PREJUDICE** the City's Motion for Attorney's Fees and **GRANTS** the City leave to refile its Motion subject to the provisions of this Order.

### B. Mediation and Reasonableness of Fees Sought

Although the Court denies without prejudice the City's Motion for Attorney's Fees and grants the City an opportunity to refile its Motion, the Court finds that the fee dispute between the parties rationally should be capable of settlement. In particular, should the City prevail on a second Motion for Attorney's Fees, Plaintiffs will be on the hook for the additional, reasonable attorney's fees the City incurs in filing this renewed Motion. And given the dearth of case law addressing constitutional takings claims analogous to Plaintiffs',

the Court would not be surprised if Plaintiffs come up woefully short in their response to the City's second Motion for Attorney's Fees.

. Accordingly, the Court **DIRECTS** counsel to meet and confer regarding settlement of the fees dispute within seven (7) days of the date of this Order. If counsel are unable to reach an agreement for settlement of this fee dispute at that time, they shall discuss whether referral of this matter to a magistrate judge for mediation would be helpful. If counsel for all parties agree that this matter should be referred to a magistrate judge for mediation, they shall notify the Court within three (3) days of this determination. Counsel are required to submit a joint certification of their efforts to confer and resolve this matter in person upon completion of their meeting.

To increase the likelihood of successful resolution, the Court provides this brief explanation of its view of the reasonableness of the City's attorney's fees demand. Three factors weigh heavily on the reasonableness of the fees the City requests. First, even if Plaintiffs' § 1983 claim was not completely groundless at the start of this case, absent some persuasive argument to the contrary, Plaintiffs' taking claim arguably became patently meritless when the Cobb County Superior Court firmly rejected Plaintiffs' arguments and granted the City its motion for attorney's fees. The Superior Court found that Plaintiffs "had no justifiable issue of law or fact and brought [that] action completely without legal cause." (Def. Mot. Attorney's Fees Ex. A ¶ 12, Doc. 31–1.) And the specific action to which the Superior Court refers is Plaintiffs' Verified Emergency Complaint, in which Plaintiffs assert an "illegal takings" claim premised on the City's efforts to enforce the Consent Order and demolish Plaintiffs' Property. Accordingly, the Court would use as a starting point to assess reasonable attorney's fees, the date on which the Plaintiffs presumably learned of the Superior Court's attorney's fee award, November 15, 2012. (*See* Maine Aff. Ex. A at 9, Doc. 39–1.)

Second, the Court acknowledges that much of the City's counsel's work in defending this action is duplicative of what the City had already done in the Cobb County Action. The City's counsel should reasonably have been able to reduce the hours spent drafting, for example, the factual background section of their Motion for Judgment on the Pleadings given their familiarity with this case.[11] Likewise, given the City's counsel's extensive litigation experience in this area of the law, much of the legal research and writing required to support their ante litem notice argument would surely have been previously conducted. Similarly, the hours charged for the Motion for Judgment on the Pleadings was excessive. According to the fee itemization, the City's counsel incurred a total of 45.7 professional hours drafting the Motion and associated documents. Major portions of the Motion tracked earlier briefs in the state court litigation. Based on the Court's experience, it finds that 30 hours of time on this Motion would be reasonable.

Finally, the Court does not find it reasonable to include in an attorney's fees request under § 1988, more than 2.5 hours worth of time relating to claim adjusting. (*See* Maine Aff. Ex. A at 14.)

Applying these factors to the fee itemization attached to the City's counsel's fee affidavit, if the Court grants the City's request for attorney's fees, the Court is

---

11. That the City retained different counsel in the Superior Court is of no consequence, for surely their current counsel had the benefit of previous counsel's client file.

likely to apply a 25 to 30 percent reduction for fees thus far incurred.

### III. CONCLUSION

For the foregoing reasons, Defendant City of Marietta, Georgia's Motion for Attorney's Fees, pursuant to 42 U.S.C. § 1988, [Doc. 31] is **DENIED WITHOUT PREJUDICE.** Counsel for the parties are **DIRECTED** to meet and confer regarding settlement of the fees dispute within seven (7) days of the date of this Order. If counsel are unable to reach an agreement for settlement of this fee dispute at that time, they **SHALL** discuss whether referral of this matter to a magistrate judge for mediation would be helpful. If counsel for all parties agree that this matter should be referred to a magistrate judge for mediation, they shall notify the Court within three (3) days of this determination. Counsel are required to submit a joint certification of their efforts to confer and resolve this matter in person upon completion of their meeting.

If the parties are unable to settle their fee dispute, the City is free to refile its Motion for Attorney's Fees along with an addendum not to exceed five (5) pages that directly tackles Plaintiffs' precise legal theory. Such refiled Motion **SHALL** be filed within sixty (60) days of the date of this Order. And to support this Motion, the City must attach a fee itemization and affidavit, as before, but this time, separate the itemization by individual biller and indicate the billing rate for each individual. If in response, Plaintiffs are unable to articulate more clearly the factual predicates and legal authority supporting a constitutional violation, the Court will award the City reasonable attorney's fees.

As noted above, Plaintiffs are urged to keep in mind that the City's attorney's clock continues to run for purposes of assessing attorney's fees and that a quick resolution of this fee dispute remains in Plaintiffs' interest.